May it please the court, Michael Cox appearing on behalf of the appellant, Jerry Lopez. And what we have in this appeal, your honors, is we have one issue, and it's an issue I'm sure this court has dealt with dozens of times, if not hundreds of times, and it's the issue of misjoinder or the denial of a motion to sever between co-defendants, not claims, but between co-defendants. And there's a couple issues here which I think distinguish this from the typical case, because I know these cases face an uphill battle with the ADEPA standards and with the constitutional prejudicial standard in terms of finding a failure to sever a case unconstitutional. And the two things that I think stand out here that distinguish this case and makes this case meet those standards is, number one, in this case we have evidence that my client, Mr. Lopez, should have been able to present at the trial, and he was prevented from putting on, and not just the case where inadmissible evidence comes in against him. The standard case, you have inadmissible evidence. My evidence was that. What's that? My evidence was that. Well, there's two things I'm concerned about, and what they are, and I've outlined them in the brief, is there were two witnesses who were put on to discuss, who were witnesses who cut plea deals in a different murder, the Kip Logan murder, the I-95 shooting. And those two witnesses, when they were put on the stand, ultimately it led to them discussing the facts of that murder. And in the case, they were prevented from saying who the real shooter was in that murder because it was the co-defendant, Mr. Lyle. And so they had to say it was an unidentified male, which, of course, raised the problem for them. But by the end of the trial, it was obvious it wasn't Lopez. What's that? By the end of the trial, it was obvious that it wasn't Lopez. I would disagree with Your Honor there and say it was confusing, and I don't think it was ever fully cleared up the way it should have been, unequivocally, to show that it was made, and Your Honor is correct, there were efforts made to try and clear it up to say it wasn't Lopez, but I don't think it ever got to the point that it was unequivocal that it wasn't him. In fact, I think one of the problems you'll see is that the district attorney in the case, the witnesses Mr. Lopez was allowed to put on to try and show that it wasn't him, was his mom and his girlfriend. But in the cross-examination of his mom, the district attorney showed that, well, hey, there's doubt about whether she knows whether Mr. Lopez was in Las Vegas during the time of the Kip Logan murder. There was no doubt about the other witness. The girlfriend, what happens there is that in a closing argument, the DA gets up and says she was with him every minute. We know that's not true, because he had a separate purpose. There was two reasons. He was interested in showing that Lopez went back to Las Vegas to talk to John Melcher. So he then impeaches her in his closing argument, and that impeachment not only goes to that issue, but it also goes to the issue of Lopez not being the shooter in the Kip Logan matter. So I think that the way it played out, it was never made unequivocally clear, and Mr. Lopez had the right to ask Mr. Melcher and ask Mr. Evans on the stand, it wasn't Mr. Lopez in the van with you. Why would anybody think it was Mr. Lopez, anyway? Why would they think it was? Well, because I think there would be confusion that when they say it's an unidentified male, obviously if it's somebody It could have been you, it could have been anybody, but Well, if it's somebody that's not in the courtroom, I think they're going to say it was Joe Smith. So everybody knows it's not one of these two guys. So once they say it's an unidentified male, I think the reasonable conclusion from anybody is, it's one of those two guys. Which guy is it? I'm not sure. Well, you're saying a great deal of sophistication on the part of jurors about the fact that they, I mean, I presume they would say it was an unidentified male because we don't know who it was, or for some reason we're not saying, I don't know. Right. I think it's a reasonable conclusion that they would do that, but I understand Your Honor's point. And I don't want to, so that's one of the things. The other thing is, is that we had an argument that, or the defense counsel for Mr. Lopez had an argument that he should have been able to put on the evidence that Mr. Lyle was in fact the shooter in the Kip Logan murder, because that goes to evidence of modus operandi, and they wanted to put on evidence to say, hey, if he acted spontaneously there, you know, he acted spontaneously here, too. It's his modus operandi to do these things without forewarning, without knowledge to anyone else around him, that he just acted spontaneously in these situations, and Lopez wasn't an accessory to this murder. They weren't allowed to put that evidence on, either. And so that's one part. That's the exculpatory evidence that wasn't allowed in. Then we have also, which I think makes this case stand out, was a lot of times in these cases you'll look and you'll say, hey, all this inadmissible evidence is coming in, and a lot of it came in here, and I'm going to get to that, that was damaging to Mr. Lopez, wouldn't have been allowed if he had a separate case, but was admissible against Mr. Lyle. We have that all the time in these cases, but what they're always counterbalanced with is the strength of the evidence of guilt of my client in this case. Here we don't have a strong case of guilt. As a matter of fact, it's a very, very weak case. And one thing the Nevada Supreme Court did in its opinion that helps us all out a lot here is they actually cataloged the evidence against Mr. Lopez. They set forth the seven things they felt It's not the best. What's that? Not the best. I mean, it's, you know. And I would say this is the argument I'd make. There's seven points there. Six of those seven have nothing to do with foreknowledge or active participation. And those are elements of the crime of first-degree murder, what he was convicted of. Well, was he convicted of first-degree murder or felony murder? First-degree murder. I mean, a first-degree felony murder or intentional murder? It's my understanding it was intentional first-degree murder as an aider and abetter. He didn't do the shooting on anybody's theory. No. So it had to be a variety of felony murder now, or conspiracy or something. It's my understanding it was an aider and abetter. Aiding and abetting. Aiding and abetting. First-degree murder as an aider and abetter. And so, but you need still you need the foreknowledge and the active participation. The one piece of evidence they had was the statement from the witness, Adam Evans, who said, and I'm paraphrasing it, and it's set out in my brief, but we got him good, we got him clean, saying my client said this to him. And I think where the Nevada Supreme Court was a bit unreasonable is that they did not, in their opinion, share the context of Mr. Evans' statement, because there's a lot of problems with it. And if I could, Mr. Evans was a 14-year-old who was held for seven months in an adult jail, and his statement only comes after these seven months, and he's cutting a plea deal to avoid a death penalty himself. He admits that the adult jail was terrifying. He admits that the day, he says, Mr. Lopez made this statement to him, he was smoking chronic and he had drank a six-pack of beer. There was another witness to this same conversation that the state had who doesn't recount this statement existing at all. And so, and his statement also doesn't make any sense when you listen to it. We did it clean when we know the murder of Mr. Lush, when he was murdered, he was left in a spot where he was found within 24 hours. It wasn't, there was no attempt to hide him, there was no attempt to clean up the crime scene, nothing like that. So the, you know, to say this one, he's been convicted basically on this one statement, and yet that's what you have to counterbalance in all these other things that happened because this trial wasn't severed. Mr. Evans was subjected to pretty extensive cross-examination. He was, Your Honor. He was. And I would, and I believe all these things did come out during the cross-examination, so I would admit that. In terms of the evidence that came in that you say, and I know you're staying away from that because, you know, I think it's your strongest point, but wouldn't most of that have come in anyway? I mean, Lyle had made confessions to various people, which it seems to me were not testimonial. It doesn't appear they were. They were just talking to his friends. And when this would have been an Ohio versus, and if Ohio versus Roberts was the governing rule, they were missions against penal interest, and they were part of the story of the crime because, you know, he had to know what happened here, and the fact that there were two of them, and the fact that Lyle agreed that Lyle had shot somebody as part of the crime, so why wouldn't it have come in anyway? Well, I appreciate Your Honor's interest in that, but I think what happened at the trial is the judge did rule those statements were inadmissible against Mr. Lopez, made that decision at the time, and so I haven't researched it to, and there's been no argument from the state that they were, in fact, admissible. So I can't fully answer your question. So he gave limiting instructions as a result? He did. He would say, okay. To redact or anything, because they didn't implicate him. That's correct. I mean, he would say, these were outside the presence of Mr. Lopez, basically I'm accepting the objection, I'm going to instruct the jury, you cannot consider this evidence against Mr. Lopez. Did he give those limiting instructions throughout the course of the trial? He did. Or just at the end of the trial? I'm sorry, it was she who was the judge. She did give those instructions. As these events occurred? As they occurred. She would go through, and every time it would come, the defense attorney would stand up and say, I have an objection to that, hearsay, or, you know, my client wasn't there at that time, and the judge would say, hold on a second, I'm going to instruct the jury, you cannot consider this testimony against Mr. Lopez. And then at the end, she gave the jury instructions? Yes. Yes. But I would say that, you know, what you look at in these cases, and I mean oftentimes that's the death knell in some of these cases, but what you look at is, the court's always looking at it and saying, well, what do we have as a counterbalance? There was a mountain of evidence of guilt against this guy. We don't have that here. We have very little evidence of guilt against Mr. Lopez. And then you look at the quality of the evidence that came in, and one, and I've outlined them for you in the briefs. All the stuff that came in of the character we were talking about before doesn't implicate Lopez. So what, why implicates Lopez? Well, I just, just the guilt by association effect, when you have a guy like Mr. Lyle, who, without Mr. Lopez's knowledge, without Mr. Lopez being there, goes to a witness and says, you know, when I, when I killed Justin Lush, I looked him in the eye and said, you know, I'm not going to get a thrill out of it. I mean, that guy, that's a monster. That's a despicable thing, and it's going to enrage a jury. I thought the case law, though I don't understand what they are saying, keeps saying the fact that he would, that kind of spillover guilt by association doesn't seem to be a basis for, for, for severance. I, I, I, I understand it to be a little bit different, Judge, and this is the, how I understand it. I understand it to say that typically that's not enough to get you over the hump. And, but it's, it's, it's not to say that you don't consider it at all. You got to consider it in, in terms of the whole context of everything. And I'm saying, the difference we have here, not only do we have the spillover stuff and, and the ugly stuff about Mr. Lyle. I mean, there's a quote from the judge at the trial who says, he's the poster child for Crimes Are Us. He's been on the, and she talks about the media publicity. He's been on the five o'clock, six o'clock, eleven o'clock news continuously for the last six months. And I'm paraphrasing again, but the, the quotes in the transcript. That, that when you, when you have a spillover effect and you have   to look at that in context with the, the, the amount of evidence of guilt you have against the co-defendant as to whether he should have been entitled to be severed. And you also look at the additional issue I have here, which is rare, that a judge, a trial judge will say, I'm not going to let you present exculpatory evidence, and I've already discussed those issues. I, I mean, I think there's a, there's a quote I have here that I think summarizes the confusion that kind of re, reigned at this trial in, in regard to my client  present exculpatory evidence, and I've already discussed those issues. I mean, I'm not going to sentence him. And I have this on page 19 of my brief, but I'll read it to you. And it says, and, and, and you've got to understand, my client received a very harsh sentence here. He received two life sentences and an additional six years for conspiracy. And they were all set to run consecutively. And what the judge said when she made the determination to run them consecutively is this. The recommendation is to run these consecutive one to another. I think that, that is the appropriate way to  talking about the defendant, you may have been, you may have been, you may have been the one who was talking to Mr. Lopez, as the evidence presented, the less culpable, culpable person in this crime. But you're the older person. You're supposed to be the more wiser person, and perhaps you didn't know what, let's say that you did not know what Kevin Lyle was going to do when he got out of the car with Jason Lush. I, I, I think that's a mistake. I think it's Justin Lush. The bottom line is you were the only one who could have prevented this murder. You were the only one who could have said, Kevin, get back in the car. Kevin, leave the gun in  the car. You ultimately must share the responsibility for the death of another human being, because you were the leader, because you were the older, and because you were the one who could have prevented this from happening. Now, what the judge is talking about here is, is a failure to act. It's not talking about taking the, the, the things you need to be convicted of first degree murder. Active participation, foreknowledge. And, and I understand the moral responsibility in a situation like this, and I, and I don't think it's out of line for the court to say  that even when she comes to make these things consecutive, she's not using any evidence of the crime he committed, but is looking at something completely different, and that's the ability that he's associated with this guy, and therefore, he should have the responsibility to go out and stop him from doing these things. And if I could, I would reserve five  Yes, you may. Thank you, Your Honors. May I please the court? I'm Deputy Attorney General John Warwick. I'm here on behalf of a respondent, a, a, a plea. The, the issue before this court is whether or not this trial should have been severed, so that Mr. Lopez would have had a separate trial from that of Mr. Lyle. The state's position, of course, is that the state trial court's decision to keep these two defendants and, together, and to    the, the, the over-arching concern here is that that there would not be a constitutional violation that results in prejudice so great, so as to, so as to deny one defendant his Fifth Amendment right to a fair trial, and that did not happen here. The facts that were alluded to by the petitioner in this case, the evidence that Mr. Lopez brought to the court, the evidence regarding the sufficiency of the evidence of the case, that is not a stand-alone issue that's been certified to this court. So what we're looking at is a prejudice issue. Was Mr. Lopez prejudiced? And the answer is no. And how, I mean, what's odd about the doctrine here is that the prejudice essentially comes in at both ends, right? Because the, the substantive issue depends on prejudice too. Correct. You, you've got evidence that can come in against Mr. Lyle, which was not allowed in because of the prejudice it would have inflicted upon him, in, in his case. And then you also have evidence that came in against Mr. Lopez. So it does work both ways. But when you have, for example, defendants who are indicted together, there's a preference that they be tried together. And the way that the courts have looked at this type of issue is that, well, if we have a jury and the jury follows their instructions, and we have, I believe it's jury instruction 22, at the end of the trial, that tells them that they are to consider the evidence, the evidence against these two defendants separately, then the, the jury is assumed to have done so. And there's no indication whatsoever that the jury did not follow the   instruction. And the petitioner noted, during the course of the trial, when there were objections raised by Mr. Lopez's attorney about certain evidence, the jury was instructed that that evidence could be used against, for example, Mr. Lyle, or was to be considered against Mr. Lyle, but not to be considered against Mr. Lopez. The Supreme Court in Buchanan v. Kentucky gave some other reasons   important. I think that's important. I think that's important. I think it's advantageous to try them together, to try two defendants together for several reasons. Yes, Your Honor. Some of the considerations, number one, you have judicial economy. But that wasn't the only one. Well, you have a feeling that there is a, there's prejudice against the state also, because of the time-consuming and expensive nature of   of, you know, conflicting verdicts. That's correct. That's correct. It's a really significant concern. Now, the fact that the jury was able to differentiate between these two defendants is shown in the result. You have the first, you have the murder convictions, but in the penalty phase, it was Mr. Lopez who was given a benefit from the jury in the   jury found that there were two mitigating factors, that Mr. Lopez had no significant prior history of criminal activity, and that he was an accomplice to the murder committed by another person. So the jury found those facts. That's at the, it's not in the excerpt of the record, but it is in the clerk's record. It's in Exhibit 91 in the state's answer to the petition of habeas  So what you have is the jury found that Mr. Lopez had no prior history  What you have here is a clear showing that the jury followed the instructions, because they were presented with certain evidence, but they came out with, in effect, two different results. And that's very important here. Because they weren't just lumped together. So if you're looking at an argument that this is a case of spillover or guilt by association, well, you really have to look at the final result. And in this case, the jury did their duty. They looked at the evidence, and they imposed what they thought, or what they found to be an appropriate verdict. Now... Was the state asking for the death penalty against... They did. Mr. Lopez? They did, is my understanding. Even though the state never claimed that he was the shooter. I would need to go back and look at the record, but I believe there, in the penalty phase, there was a special verdict form, but I could not categorically state... It must have been another one to the penalty phase. I'm sorry? It must have been another one to the penalty phase. That's correct. I don't have it before me exactly where the notice to seek death penalty would be, but I can get that to the Court later. That's all right. It's been a while since I've looked at this. Pardon? It's all right. It's been a while since I've looked at the details of this file. All right, then. Now, in regards to the evidence, once again, there is a difference between an insufficiency of evidence argument, which this is not one of those. This is not a Jackson v. Virginia case. And even if it was, there was sufficient evidence to find Lopez guilty. You do have a Lopez statement in the presence of Evans. We did it clean, and we did it good. Nobody's going to find out we did it. Now, whether or not he... Mr. Lopez... I'm sorry. Go ahead. Apparently he was going to be found immediately. It just seemed very... Not to reflect the actual facts, but... Well, perhaps, and this would be speculation, perhaps he was boasting. Perhaps someone who is inexperienced or someone who's inexperienced in committing murder, perhaps, in his opinion, it was a good job. But it seems to me that what they wanted to emphasize was the fact that they had gotten rid of someone that they considered a snitch. That's what was important to them. They also had a Lopez statement to Melcher that he and Lyle had picked up Justin Lush and took him to the desert, and that Lopez observed Lyle shoot Justin. Now, this brings up the question of the redacted statement and how that could possibly be misinterpreted. And I don't see how it could be misinterpreted. You had three people go out to the desert. One person ends up dead. And you've got a person talking about the statement of Mr. Lopez and how he described it. And it's the other guy who did the shooting. So the only conclusion that could be drawn is it wasn't Lopez who pulled the trigger. To argue otherwise, you would have to be asking the jury to believe that they should not believe Mr. Melcher and that it was Mr. Lopez who pulled the trigger. But that's not the case. So I don't see how that could be used to somehow show that Mr. Lopez was prejudiced. You also have Justin's statement to another witness by the name of Jeff Kurtz that he was going out with Vatos. And that was awesome. And they were known as Lyle and Lopez. That was the name that they went by. And Justin made that statement shortly before he was killed. Then you have Lopez who left the house, Vinaya's house. Lopez and Lyle, they left together at 2 a.m. They came back together at 4 a.m. That's the time in which Justin was dead. So you have Justin with them. You have Lopez and Lyle together when the killing takes place. For example, Lopez accompanied Lyle to sell the gun. And as the courts noted, Justin's body was found in a desert area. And this was also a desert area that Lopez was known to frequent. Now, additional evidence that was provided was that Lopez was assisted by an individual by the name of Larry Prince, excuse me, in disposing of tennis shoes that were worn, or tennis shoes that were worn possibly during the killing because tennis shoes were thrown away. And then Mr. Lopez and Mr. Lyle were seen wearing different tennis shoes after that.   was that Lopez was assisted by an individual by the name of Larry Prince against which Lopez is more than sufficient to convict. The idea that... Can I go to premeditated murder? Premeditated? Yes. Now, the question of what happened in another murder case, that evidence wasn't allowed to be brought in, but the evidence of premeditation is you have the circumstances surrounding this where people are talking or you have individuals who are involved in drug dealing, you have people talking about snitches and things of that nature. So you've got a situation in which, quite frankly, the life expectancy of people isn't the best because you're dealing with guns and drugs and people who are the type who are willing to use those weapons. So getting back to some of the prejudice, like, for example, Mr. Melcher, limiting his cross-examination, there's no prejudice there because there's no evidence linking Melcher to the shooting of Justin, for example. So the limitation on that cross-examination doesn't seem to be prejudicial. Now, Mr. Lopez also presented his own evidence that he was in California. So if Mr. Lopez is in California during the killing of Kip Logan, well, then there's really no need to cross-examine Mr. Melcher in detail about whether or not Mr. Lopez was in California when Kip Logan was shot. And the... If Lopez had been tried alone, though, the entire business about the other murder just wouldn't have come in at all. There'd be nothing about it. Right? There'd be no reason for it to be anything about it. There'd be no reason for it, and even though some of that information did, you had information that would come in about other activities. Once again, you had the limiting instructions to the jury. And it's important to recognize that there's no indication that they did not follow limiting instructions in regards to the evidence that did come into the case. The whole issue here is focused on whether it was an error to try them together, not separate them, right? That's correct, Your Honor. I was a little bit surprised that you said the reason for having a joint trial was just judicial economy. And I was mentioning to you the Buchanan case, and I think that's very significant, because it's just not only judicial economy. The Supreme Court said in joint trials the jury obtains a more complete view of all of the acts underlying the charges that would be possible in separate trials. From such a perspective, it may be able to arrive at the conclusions regarding the guilt or innocence of a particular defendant, and to assign fairly the respective responsibilities of each defendant in the sentence. Then the court even made it particularly pertinent to hear, went on to say, this jury perspective is particularly significant where all the crimes charged against the joint defendant arise out of one chain of events where there is a single victim and where, in fact, the defendants are indicted on several of the same counts. That's very persuasive to me, the reason why the Supreme Court says that it's appropriate to have joint trials. Because it gives the jury a better overall picture of what happened. Well, that doesn't make a whole lot of sense, frankly, because if it was a good thing, you should be able to do it in a single trial, too. I mean, you're essentially saying, well, we're going to let stuff in in a double trial that we wouldn't let into a single trial, and it's better because they didn't have a better picture. So you should let it in the single trial if it's so good. So long as you've got the proper limiting instructions in the jury that follows them, which is the situation here. And that was... those are the facts. First, I do think that the statement the Supreme Court made that I just cited does make sense. I guess that's where Judge Burr's on, and I disagree. It just seems to me that if this is a good thing, that it shouldn't depend on whether there are two defendants or one defendant. It should be allowed. Well, and the standard that we're looking at overall, finally, is did the Nevada Supreme Court or the state courts make a decision that was contrary to the oppressive followed by the United States Supreme Court? I understand we're bound by it, but when I read it, it seemed a little peculiar to me. All right. And if the court has no further questions, I would ask the court to uphold the lower court's decision. Thank you. I believe there was some time for rebuttal. Thank you, Your Honor. And just a couple brief points. I don't think I'll need the full time, but in regard to the ability of the jury to differentiate, and it was raised by Judge Reed down in his opinion as well as it was by Mr. Warwick here, but the thing that they're saying the jury differentiated on was something that wasn't in dispute. Mr. Lopez was not alleged to be the shooter, was alleged to be the accomplice. So when it came to the sentencing, they were going on facts that were not in dispute, weren't part of the problem that we had with the joint trial. The issues with the joint trial would have prejudiced just the finding of guilt, not the determination if they make the finding of guilt, what the appropriate sentences should be. So I don't find, in my view, I don't think that's a strong argument that the jury differentiated in sentencing, so therefore they're able to separate out all this evidence. And I think you can see the problem with separating out all this evidence is when Mr. Warwick makes a statement that they had got rid of someone they thought was a snitch. That's using evidence that was only admissible against Mr. Lyle. And it's being confused here as to being admissible against Mr. Lopez. If you read the Nevada Supreme Court case, they write up all the facts jointly and don't separate them out. And so when they're always melded together like this, how can a jury be expected to make these distinctions and keep these facts separate when it's difficult for lawyers and judges and everybody else to keep the facts separate? There would have been no evidence of Mr. Lyle's statement that I'm going to get a snitch or whatever the exact words he used in a separate trial for Mr. Lopez. In other words, if a jury heard this case and they heard how terrible Lyle was and that he'd done an earlier murder and that he was a shooter and so on, it could all make your client look pretty good. Yeah. And I mean, the point you made is that the defense, Mr. Lopez's defense, in a separate trial, could have kept the Kip Logan case out altogether. They didn't get the chance to make that strategic decision. But then once the Kip Logan case comes in, the jury's left with the decision. Who's the unidentified male? And we've already discussed that. But they could have also thought it was Mr. Lyle, in which case he's even a worse person. Well, I clearly thought it was Mr. Lyle and he's even a worse person, right? Yeah. So Lopez was looking pretty good. Well, I think he's not looking too good when you have the closing argument from the DEA saying he says they've been together forever. They were buddies. Yeah. Well, it was a little more stronger than that in that Mr. Lyle, if I remember correctly, he was raised by Mr. Lopez's family for some part of his youth. The final thing is I would say that in terms of the seven, when the Nevada Supreme Court catalogs the evidence and it comes up with the seven items, they do not all go to premeditated murder. And I would submit to the court that two through seven don't go to premeditated murder when you look at it. You're weighing how strong was the case against Mr. Lopez and whether these other things really did prejudice him. And that's my view. You've got to look at the totality. Are we talking about premeditated murder for Lopez? Yes. Are we or are we talking about conspiracy, aiding and abetting, and so forth? Well, it's conspiracy and it's aiding and abetting with the foreknowledge and the act of participation. So... We're not talking about his premeditation, are we? Yeah. I would clarify my statement to say it would have to be foreknowledge and act of participation were the elements of the crime here. And that two through seven have nothing to do with those. And I'll just give you an example. Lopez's statement to Melcher that he and Lyle, this is number two, picked up Justin and took him to the desert and that Lopez observed Lyle shoot Justin. It doesn't show, he never says, I knew he was going to do it, I was helping him do it. He just says, I was there and I saw it. But nothing says I had foreknowledge or I actively participated in that statement. The only statement that has any... I don't want to get off on a side issue here, but wouldn't it be a reasonable inference for the jury to draw? I don't think so. I mean, I think you have to have some evidence of foreknowledge and act of participation and to say just... And there's an instruction that says you can't convict somebody just for being a mere bystander. Why did they drive him out to the desert? Well, my understanding is that Mr. Lopez, well, went out with... I've got to try and restrict myself to the record. That the defense was that Mr. Lyle had some kind of drug deal going with Mr. Lush and the thing went awry and just spontaneously, the way Mr. Lyle is... To do what? To do the drug deal, whatever the drug deal was they were doing or whatever their involvement is in some form of drug deal, whether it was talking about it or having their meeting about it or doing the actual drug deal, I don't recall from the record. But it was something to do with that. Thank you, Your Honors. I appreciate it. Thank you. We appreciate the arguments on this case. The matter Lopez v. Del Papa is submitted. And that ends our session for the day and for the week. Thank you all very much. Thank you.
judges: Hug, Paez, Berzon